IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| KENITH WINDHAM<br><br>   Plaintiff,<br><br>  v.<br><br>CITY OF CENTER, TEXAS, SPENCER JACK ANDERSON, AND CHRISTOPHER COLE KNOWLTON,<br><br>   Defendants. | Case No. 6:17-cv-475<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW KENITH WINDHAM, "Plaintiff" herein, complaining of the CITY OF CENTER, TEXAS, SPENCER JACK ANDERSON, and CHRISTOPHER COLE KNOWLTON, "Defendants" herein, and for cause of action will respectfully show the Court the following:

**I. BACKGROUND**

1. This case concerns the January 21, 2017, beating of Kenith Windham at the hands of two Center, Texas, police officers: Spencer Jack Anderson and Christopher Cole Knowlton.

2. Plaintiff's claims are asserted pursuant to 42 U.S.C. sec. 1983.

3. The City of Center, Texas, has a policy, custom, or practice of tolerating police beatings of citizens, which directly resulted in serious physical injury to Plaintiff.

**II. PARTIES**

4. Plaintiff Kenith Windham is a resident of Shelby County, Texas.

5. Defendant City of Center, Texas, is a municipality wholly within Shelby County,

Texas.

6. Defendant Spencer Jack Anderson is a resident of Rusk County, Texas. Defendant Anderson is also a police officer employed by the Center Police Department, which is located within Shelby County, Texas.

7. Defendant Christopher Cole Knowlton is a resident of Nacogdoches County, Texas. Defendant Knowlton is also a police officer employed by the Center Police Department, which is located within Shelby County, Texas.

### III. JURISDICTION AND VENUE

8. The Court has original jurisdiction over this action pursuant to 28 U.S.C. secs. 1331 and 1343 since Plaintiff is suing for relief under 42 U.S.C. sec. 1983. Any State law claims are brought pursuant to 28 U.S.C. sec. 1367 and are subject to this Court's supplemental jurisdiction.

9. Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. sec. 1391 because the defendants are domicilied and/or reside in the Eastern District of Texas, and all or a substantial part of the cause of action accrued within the Eastern District of Texas.

### IV. FACTS AND ALLEGATIONS

10. On January 21, 2017, Plaintiff was visiting the gravesite of his recently-deceased-and-buried mother.

11. Plaintiff left the cemetary in a vehicle, alone, to travel home, and did not stop anywhere after leaving he cemetery and before encountering Defendant Anderson.

12. After Plaintiff left the cemetary, Defendant Anderson started chasing Plaintiff in his patrol car.

13. Defendant Anderson later attempted to justify the chase by claiming that Plaintiff was leaving a "known drug house."

14. Plaintiff had no drugs and no weapons in his possession or vehicle.

15. Defendant Anderson had no legal justification to interfere with Plaintiff's travels between his mother's gravesite and his home.

16. Plaintiff did not pull over.

17. Defendant Anderson followed Plaintiff to Brown Street, where Plaintiff had an accident.

18. These incidents took place in Shelby County, Texas.

19. Defendant Anderson pursued Plaintiff on foot for a short distance.

20. Defendant Anderson presents himself to be an "MMA Fighter".

21. "MMA" is an acronym for "mixed martial arts," and refers to a full-contact, combat sport that allows both striking and grappling, standing and on the ground, and using techniques from other combat sports and martial arts.

22. Defendant Anderson has MMA training.

23. Defendant Anderson uses MMA fighting techniques on citizens while he is working as a police officer.

24. MMA fighters are trained to punch, kick, choke, grab or do anything else to their opponents to win matches.

25. MMA fighters win a mixed martial arts match by three different ways: knockout, hold into submission, or by judge's decision.

26. MMA also involves the use of leg holds—wrapped around the opponent's lower torso to permit control—choking, and face punching.

27. Defendant Anderson used these techniques on Plaintiff.

28. Defendant Anderson repeatedly struck Plaintiff's face so hard that he broke several bones in Plaintiff's face despite Plaintiff's attempts to avoid the repeated, unjustified strikes,

surrender, and "tap out".

29. Defendant Anderson choked Plaintiff until he nearly passed out.

30. Defendant Anderson also wrapped his legs around Plaintiff while doing these things.

31. Plaintiff did not strike Defendat Anderson, but merely flailed in an attempt to avoid being beaten, as any human being would do while being grappled, choked and punched, repeatedly, in the face.

32. Defendant Anderson later complained that his knee was hurt, which he claimed resulted from Plaintiff "falling on him".

33. Defendant Knowlton arrived and placed handcuffs on Plaintiff.

34. Defendant Knowlton repeatedly admonished Plaintiff to stop squirming and spitting while Plaintiff was on his knees, bleeding, and handcuffed.

35. Plaintiff was spitting blood because his mouth was filling with blood due to multiple injuries to his face and mouth including a broken palate, and he was spitting on the ground not in the direction of anyone.

36. Defendant Knowlton threatened to let his dog—referring to a barking K-9 in his vehicle—attack Plaintiff, or words to the effect; Defendant Knowlton then went to his vehicle where the dog was located.

37. Defendant Knowlton also threatened to slam Plaintiff's face onto the ground, again, because Plaintiff was spitting blood.

38. Plaintiff, who had already been beaten, was suffering severe injury and disorientation, and is afraid of dogs, reasonably believed that Defendant Knowlton was going to allow his dog to attack Plaintiff when Defendant Knowlton walked back to his vehicle.

39. Plaintiff, fearing for his life, stood up, still handcuffed with his hands behind his back, and awkwardly attempted to run into some bushes in an attempt to avoid further injury.

40. Both Defendants Anderson and Knowlton chased Plaintiff a short distance to the bushes. When Anderson reached the Plaintiff, he resumed striking the helpless and handcuffed Plaintiff in the face, then threw the Plaintiff onto the pavement. Since his hands were behind him, Plaintiff was helpless to break his fall.

41. This occurred in the direct view of Defendant Knowlton, who continued to do nothing about the severe beating by his subordinate.

42. Other officers and emergency personnel began arriving, including Plaintiff's brother, who is a Shelby Sheriff's Office detective.

43. Upon noticing Plaintiff's brother's presence, the demeanor of Defendants Anderson and Knowlton changed, and they attempted to prevent Plaintiff's brother from seeing him.

44. Plaintiff was taken directly to an emergency care center by ambulance.

45. Officers ensured that Defendant Anderson was placed on a gurney with his alleged hurt knee while Plaintiff was forced to sit on the floor with an obviously, severely broken face.

46. Officers ensured that a Justice of the Peace immediately bonded Plaintiff from custody to avoid responsibility for medical expenses.

47. This was consistent with Defendant Knowlton's statements at the scene to the effect that he did not care about Plaintiff's obvious injuries, but cared a great deal about Defendant Anderson's questionably hurt knee.

48. Ultimately, the treatment of Plaintiff's injuries specifically attributable to Defendants Anderson and Knowlton required surgery and care, resultd in more than $120,000.00 in medical charges.

49. Plaintiff still suffers loss of depth perception, impaired peripheral vision, impaired sense of smell, and other nerve damage because of these beatings. He lost his job because of his injuries and limitations.

50. The police chief for the city of Center, Texas, is Jim Albers. Chief Albers was one of the officers who arrived at the scene while Plaintiff was still present.

51. Chief Albers is a final policymaker for the City of Center in police department matters.

52. Defendant Anderson has a history of beating citizens in his job as a police officer.

53. After beating a citizen, Defendant Anderson often pursues "resisting arrest", "assault on a public servant", or other charges against the citizens he harms to justify and cover his misdeeds.

54. Defendant Anderson made charges of resisting arrest and driving while intoxicated against Plaintiff, both of which were rejected by the prosecuting authority.

55. The City of Center, Texas, by and through its Police Chief, is aware of Defendant Anderson's history; nonetheless, Defendant Anderson was hired, was placed and kept on patrol without supervision, was not disciplined for his misconduct, and is still a patrol officer of the City of Center, Texas, police force, thereby enabling further violence and excessive force from him on citizens, including Plaintiff

56. Defendant City of Center, Texas, has done nothing to prevent continued Constitutional violations of this nature by these officers.

57. Specifically, Defendant Anderson has engaged in past instances of similar misconduct, yet Anderson received no training, no discipline, no additional supervision, and was retained in his job, thereby enabling Defendant Anderson to commit the same acts upon Plaintiff.

58. Further, the violations of Plaintiff's and other individuals' rights was attended and observed by numerous officers, including the Police Chief himself, as detailed above. These officers feel free to commit these Constitutional violations in the open.

59. Defendant Anderson's beating and throwing of the then-handcuffed Plaintiff occurred in full view of Defendant Knowlton, who is a Seargeant with the police department and, therefore, Defendant Anderson's superior.

60. Defendant Center, Texas, and its Police Department's actions and inactions amount to a persistent, widespread practice by governmental agency officials or employees which, although not officially promulgated or adopted, is so common and well settled as to constitute a policy or custom that fairly represents the Department's policy.

61. At all times relevant to the claims in this pleading, Defendants Knowlton and Anderson were acting under color of State law as police officers for the City of Center, Texas.

62. Upon information and belief, Defendants Anderson and Knowlton were not properly trained in appropriate use of force to affect an arrest.

63. Upon information and belief, Defendant Anderson was not properly trained in legal justification for a traffic stop.

64. Upon information and belief, Defendants Anderson and Knowlton were not properly supervised, even though supervision was clearly needed.

65. Upon information and belief, Defendants Anderson and Knowlton were not disciplined for this incident, and are still retained as police officers for Defendant Center, Texas.

66. Defendants acted with deliberate indifference to Plaintiff's Constitutional right to be free from excessive uses of force.

V. **EXCESSIVE USE OF FORCE – DEFENDANT ANDERSON**

67. Plaintiff repeats and re-alleges each and every allegation contained in the previous

paragraphs as if fully repeated herein.

68. Acting under the color of law, Defendant Anderson has deprived Plaintiff of the rights and privileges secured to him by the Fourth Amendment to the United States Constitution and by other laws of the United States to be free from unreasonable seizures, including the use of excessive force.

69. The right to be free from excessive force at the hands of law enforcement officers was well established at the time of this incident.

70. By his actions as described above, Defendant has violated 42 U.S.C. § 1983 and the Constitutional provisions cited therein.

71. As a professional police officer, Defendant Anderson should have known that the force that he used, to wit: wrapping his legs around Plaintiff and choking and beating him in the face with his fists until Plaintiff sustained several broken bones, including while Plaintiff was handcuffed, and throwing a handcuffed person to the ground, was excessive.

72. Plaintiff suffered an injury at the hands of this defendant, resulting from clearly excessive force, and the excessiveness of which was clearly unreasonable.

73. No reasonable police officer would have believed it necessary to use the degree of force that was implemented against Plaintiff.

## VI. EXCESSIVE USE OF FORCE – DEFENDANT KNOWLTON

74. Plaintiff repeats and re-alleges each and every allegation contained in the previous paragraphs as if fully repeated herein.

75. Acting under the color of law, Defendant Knowlton has deprived Plaintiff of the rights and privileges secured to him by the Fourth Amendment to the United States Constitution and by other laws of the United States to be free from unreasonable seizures, including the use of excessive force.

76. The right to be free from excessive force at the hands of law enforcement officers was well established at the time of this incident.

77. By his actions as described above, Defendant has violated 42 U.S.C. § 1983 and the Constitutional provisions cited therein.

78. As a professional police officer, Defendant Knowlton should have known that the force that he used, to wit: threatening Plaintiff with a dog attack or further injury at the hands of an officer for spitting blood on the ground, and beating Plaintiff's face while he was handcuffed and on the ground, was excessive.

79. Plaintiff suffered an injury at the hands of this defendant, resulting from clearly excessive force, and the excessiveness of which was clearly unreasonable.

80. No reasonable police officer would have believed it necessary to use the degree of force that was implemented against Plaintiff.

## VII. CITY OF CENTER, TEXAS – MUNICIPAL LIABILITY

81. Plaintiff repeats and re-alleges each and every allegation contained in the previous paragraphs as if fully repeated herein.

82. Defendant Center, Texas, in the person of its Police Chief, has ratified prior instances of excessive use of force by Defendant Anderson, and this incident, as described above.

83. Further, Defendant Center, Texas, and its Police Department's actions and inactions amount to a persistent, widespread practice by governmental agency officials or employees which, although not officially promulgated or adopted, is so common and well settled as to constitute a policy or custom that fairly represents the Department's policy, which resulted in the beating of Plaintiff by Defendants Anderson and Knowlton.

84. Defendant Center, Texas's failure to adequately screen for hiring, train, supervise, or discipline its employees in relevant respects reflects a deliberate indifference to the rights of

citizens and constitutes a custom or policy which resulted in Plaintiff's injuries.

## VIII. DAMAGES

85. Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully repeated herein.

86. As a direct and proximate result of the occurrence made bases of this lawsuit, Plaintiff was forced to suffer:

87. Significant physical injuries and permanent impairment

88. Medical Bills;

89. Physical pain and suffering;

90. Emotional distress, torment and mental anguish;

91. Pursuant to 42 U.S.C. § 1983 and 1988, Plaintiff seeks to recover, and hereby requests the award of exemplary damages, reasonable attorney's fees and costs of court.

## IX. JURY REQUEST

92. Plaintiff respectfully requests a jury trial.

## X. PRAYER

93. WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against Defendants, for amount in excess of jurisdictional minimum of this court. Plaintiff further prays for all other relief, both legal and equitable, to which he may show himself justly entitled.

DATED: Friday, August 18, 2017    Respectfully submitted,

*/s/ L. Charles van Cleef*
L. Charles van Cleef
State Bar No. 00786305 (TX)
Van Cleef Law Office
PO Box 2432
Longview, Texas 75606-2432
(903) 248-8244
(903) 248-8249 Facsimile
charles@vancleef.pro

**ATTORNEY FOR PLAINTIFF,
KENITH WINDHAM**